## Case No. 8,936.

### MADDUX v. USHER.

[2 Hask. 261.] [1]

Circuit Court, D. Massachusetts. Oct., 1878.

SALE—ORDER—FOR CASH—CONDITION PRECEDENT —FORWARDING GOODS — ATTACHED — TITLE— AVERMENT OF CITIZENSHIP—AMENDMENT.

1. An order, "Please ship me at once 25 bbls. same whiskey I had before," is an order for a cash sale.

2. A reply, "Please find enclosed our invoice for 25 pkgs., shipped you this day as ordered, also our draft for amount of invoice which please accept and return," is not an acceptance of such order, but a proposed sale, upon condition that the draft be first accepted; and the person giving the order, after notice of the condition imposed, can acquire no title to the goods afterwards received, unless the proposed condition is complied with.

3. The fact of forwarding the goods before compliance with the terms of sale by the purchaser is not necessarily a waiver of the conditions of sale.

4. It is a question of fact for the jury to say under all the circumstances, whether the vendor so conducted as to waive conditions of sale, that he may have imposed.

5. A vendor may replevy his goods from a United States marshal who attached them as the property of a supposed purchaser, when he has not complied with the conditions of such sale, and they have not been waived.

6. A defective averment of the citizenship of parties may be amended after verdict.

Replevin, by [William B. Maddux and others] citizens of Ohio against [Roland G. Usher] the United States marshal for the district of Massachusetts, to recover goods that he had attached as the property of a merchant in Boston, who claimed to have purchased the same of the plaintiffs. The plaintiffs alleged the proposed sale by them to have been upon condition precedent that had neither been complied with nor waived, and that they had not parted with their title to the goods. The verdict was for the plaintiffs, whereupon the defendant filed a motion for a new trial for misdirection, and because the verdict was against law and evidence.

Morse, Stone & Greenough, for plaintiffs.

Avery & Hobbs, for defendant.

Before CLIFFORD, Circuit Justice, and FOX, District Judge.

FOX, District Judge. In January, 1875, J. M. Demarest was a wholesale liquor dealer, in Boston; he had purchased from an agent of the plaintiffs, who resided in Cincinnati, a quantity of whiskey, and, on the sixteenth of January, wrote to the plaintiffs, "Please ship me at once twenty-five barrels same whiskey I had before. I have not seen your Mr. Montgomery lately, or would have ordered through him." To this the plaintiffs replied, "Cincinnati, January 21, 1875: Mr. J. M. Demarest: With this you will please find enclosed our invoice, at lowest rate, for twenty-five pack-

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

ages shipped to you this day as ordered in your favor of sixteenth; also, find enclosed our draft for amount of invoice, which please accept and return. Thanking you for the order, &c." The whiskey reached Boston some days after the receipt of this letter by Demarest; he never accepted the draft, but did take possession of the whiskey, which, with the exception of one or two barrels, was shortly after attached by defendant, the marshal of this district, on a writ against Demarest, returnable to this court, and the present action of replevin was instituted for its recovery. On the trial, the jury were instructed that, upon the written documents, the sale of the twenty-five barrels of whiskey to Demarest by plaintiffs was upon the condition of his payment therefor by his acceptance of the draft. To this instruction the defendant's counsel excepts.

Demarest's order was for a cash sale, and if it had been accepted as written, and the goods forwarded in compliance therewith, the sale would have been for cash, and he would not have been entitled to any credit; but it is manifest that the plaintiffs did not accept and act upon this offer of Demarest; but, instead thereof, for reasons best known to themselves, they declined to sell for cash, and forwarded him a sixty days' draft enclosed with the same letter with the invoice and other documents, which draft they requested him to accept and return. Demarest's proposal was not accepted, and the goods were not delivered to the railroad in compliance with his offer; but the plaintiffs substituted entirely new and different terms of sale, which, of course, they were fully authorized to do. It is said the language of the letter of the plaintiffs does not, in express terms impose, as a condition of the sale, the return of the draft accepted by Demarest; but considering the brevity and conciseness of the correspondence, we are of opinion its legal signification was to impose upon the sale this condition. After informing Demarest that they had that day shipped the goods, they enclose invoice and draft in the letter, and state therein, "find enclosed our draft for amount, which please accept and return." This surely was not a sale for cash; but on the contrary, it is manifest that, while in other respects they accepted the proposal of Demarest, they, instead of cash, required an acceptance in payment; and when we remember the informal manner in which mercantile correspondence is conducted, we think it a reasonable construction of the language here used, to hold that both parties must have understood that the contract required that the payment for the merchandise should be made by a return of the draft duly accepted. While the plaintiffs might, in precise terms, have informed Demarest that they declined his offer, and would not sell the merchandise to him except on condition of his acceptance of the draft, such formal language is hardly to be expected in business transac-

tions; and their sending him the draft and other documents on the same day they shipped the whiskey may well, in connection with the letter, be considered as equivalent to a direct assertion that the sale would depend upon such condition being performed.

It is said that the merchandise was delivered to the railroad before the plaintiffs wrote their letter to Demarest of January twenty-first, and that such delivery was, in law, a delivery to Demarest, and cannot afterwards be controlled by subsequent acts of the plaintiffs: but in our view, the plaintiffs not having accepted Demarest's proposal for a cash sale, the action of the plaintiffs in shipping the merchandise must be examined entirely independent of Demarest's previous offer, and in no way to be influenced thereby. Conceding that that offer was declined, so far as the plaintiffs' rights are involved, it is as though it had never been made. They might, if they chose, send goods of that description to Demarest on just such conditions as they thought most for their interest; and if Demarest received the goods after he was informed of the conditions upon which the plaintiffs had forwarded them, he must be held to have agreed to those conditions, and could acquire no title without compliance therewith.

The argument of defendant's counsel proceeds upon the theory that plaintiffs, having first accepted Demarest's offer, and placed the goods on the cars to be forwarded to Demarest, afterwards, on the same day, changed their purpose; but the conclusive answer to this is, that there is no evidence that plaintiffs ever accepted Demarest's proposal; on the contrary, it is clear, beyond question, that they never accepted his offer, but substituted terms essentially different, upon which they forwarded the goods to him, taking care to advise him, before the reception of the goods, of these terms, and leaving it to his option whether he would or not, on those terms, complete the purchase. All that took place in Cincinnati on January twenty-first were parts of one transaction, carrying out a proposed sale by the plaintiffs to Demarest; and the court would not be justified in selecting a single act of the parties, and hold them concluded thereby in manifest contravention of the intent of the plaintiffs, as fully communicated to the purchaser.

The language of Lord Westbury in Shepherd v. Harrison, L. R. 5 H. L. 116, is quite applicable to the present case. In that case, a bill of lading for goods and a bill of exchange to be accepted in payment were forwarded to a party, and, as in the present instance, he received the goods under the bill of lading, but refused to accept the bill of exchange. The learned judge there says, on page 130: "I think the truth of the case was this; that the two documents were originally intended to be dependent, the one on the other, and that they were sent together, under the conviction and in the confidence that the bill of exchange would be accepted and returned to the sender

in consideration of the bill of lading. That, however, was not done, and therefore I take it that the bill of lading acquired in that manner gave no right of property to the appellant." Lord Cairns, in the same case, page 133, says: "I, therefore, think that, when one merchant in this country sends to another, under circumstances like the present, a bill of lading and a bill of exchange, it is not at all necessary for him to say in words, we require you to take notice that our object in enclosing these bills of lading and bills of exchange is, that before you use the bills of lading you shall accept the bills of exchange. Merchants know perfectly well what they mean when they express themselves, not in the language of lawyers, but in the language of courteous mercantile communication; and I do not think that any merchant in England, receiving a bill of lading and a bill of exchange under these circumstances, when he came to reflect on the matter, would feel any doubt that he could not retain the one without accepting the other. * * * I believe that * * what took place in Liverpool did not vest the property in him (the plaintiff), but the property remained in the shippers."

When the sale is on condition that the purchaser should send his notes in payment, and the condition is not performed, no title vests in the purchaser. Coggill v. Hartford & N. H. R. Co., 3 Gray, 545; Hirschorn v. Canney, 98 Mass. 149.

A distinction is attempted to be drawn between a delivery of goods to a railroad and receiving therefor the common railroad receipt, and a delivery on board of a vessel, to be carried, and a bill of lading taken therefor. If it is admitted that such a distinction exists when the ship is not a common carrier, it is not applicable to the present case, as the delivery to the railroad was conditional and not absolute; the delivery, being only one act in the consummation of the sale on the twenty-first, is not to control the other branches of the contract, by one of which, this condition of payment by the acceptance was imposed on the purchaser.

The question whether there was any waiver of the condition by the delivery to the carrier was submitted to the jury, under the instructions, "that ordinarily, if a party makes a sale upon condition, and delivers the property without any understanding in reference to the continuance of the condition, this would be construed as a waiver of the condition, and it would be a presumption of law, that, if he delivered the article without any understanding between him and the buyer that the condition should continue, he intended to waive the condition. If the delivery is unaccompanied by any act, word, or circumstance, to indicate that it is qualified, or made subject to the condition, the purchaser has a right to understand that the condition is waived. The fact that the goods were actually forwarded or delivered to the purchaser, before a compliance with the terms of sale, is not necessarily a waiver of the conditions of sale. It is enough to enable the sender to retain his title to the goods, if it appears that it was the understanding of the parties, at the time of the delivery, that the condition of payment or security was not waived, though there was no express declaration to that effect at the time. The question of waiver is, therefore, a question of fact for the jury, and may be proved by declarations, acts and circumstances attending the delivery. Did the plaintiffs so deal with the property that they must be held to have waived the payment by acceptance of their draft? And had Demarest the right to understand, from what they did, that they waived this condition, and that the title to the property, by its being forwarded as it was, became Demarest's absolutely, without his acceptance of the draft?"

These instructions were substantially extracts from opinions found in the later Massachusetts decisions, and no objection is made thereto; but it is suggested in argument that upon the documentary evidence it was for the court to determine the question of waiver, as a matter of law. The answer to this suggestion is, that there was other testimony upon this point besides the documents, especially that given by one of the plaintiffs as a witness, which was not in all respects consistent, some portions tending to establish a waiver, whilst in other portions, this was strongly denied.

It is claimed that the plaintiffs have mistaken their remedy; that replevin can not be maintained against the marshal; and reference is made to Freeman v. Howe, 24 How. [65 U. S.] 450, in support of this objection. The cases are essentially different. In Freeman v. Howe, the defendant, as marshal of this district, had in his possession, under legal process, the property which the plaintiff undertook by process issued from the state court to replevin from his possession; and it was decided that the state courts could not take from the marshal property in his custody under the authority of the circuit court; there could not be a conflict of jurisdiction. In the present controversy between citizens of different states, which confers upon the circuit court jurisdiction, the plaintiffs have replevined in this court, the property held by the marshal of the court, under attachment on a writ returnable to, and pending in the same court. Instead of any conflict of different tribunals therefor, the plaintiffs appeal to the same tribunal which has directed the attachment, and invoke its assistance in determining the validity of the attachment and the plaintiffs' title to the property thus seized by the marshal on his precept from this court.

Such had been the practice prior to Freeman v. Howe [supra], as in Harris v. De Wolf, 4 Pet. [29 U. S.] 147, the supreme court of the United States sustained a judgment in replevin against the marshal of the Massa-

chusetts district, recovered in the circuit court, for property attached by him on a writ returnable before the circuit court. The case is in all these points identical with the present. Freeman v. Howe proceeds throughout upon the principle that the courts of the United States, having authorized an attachment, alone are to determine whether the possession acquired by the marshal is valid and shall remain, and declares that other tribunals cannot be allowed to disturb the possession thus acquired, and take from him the property; but it is most clearly affirmed in the same opinion, that it is the duty of the federal courts to afford to the real owners of the property, so attached, complete and appropriate remedies, and to direct a restoration to the true owner of that to which he shall be entitled. The court so authorizing an attachment is not restricted to a single remedy; but the aggrieved party may well avail himself of any remedy known to the law, which will more effectually protect his rights, and by which the federal courts may, according to well-established principles, determine the legal rights of the respective parties.

In Freeman v. Howe, it is said that a bill might be filed on the equity side of the court, to prevent injustice or an inequitable advantage under mesne or final process, it not being an original suit, but auxiliary and dependent, and could be maintained without reference to the citizenship or residence of the parties. In that case, such a remedy could alone be resorted to, as an action at common law could not be maintained in the circuit court, on account of the parties being both citizens of Massachusetts, a difficulty not presented in the present case. A right to redress being thus acknowledged by the supreme court, and Mr. Justice Nelson, having in his opinion pointed out the remedy which the party in that case might avail himself of, we hold that, when the case is different, and one in which the common law has for hundreds of years provided a remedy, a party may well avail himself of it, provided he seeks his remedy before the tribunal having the custody of his property.

In Buck v. Colbath, 3 Wall. [70 U. S.] 334, it was held that an action of trespass might be sustained in a state court against the marshal for an attachment made on a writ returnable to the circuit court, recognizing the authority of the state tribunals to hold the marshal accountable for the value of the property he may have wrongfully attached, provided his possession is not disturbed by process from the state tribunals. In Buck v. Colbath, [supra], Mr. Justice Miller, referring to the suggestion found in Freeman v. Howe that the owner could resort to a bill in equity, says: "The proceeding here alluded to is one unusual in any court, and is only to be resorted to in the federal courts in extraordinary cases where it is essential to prevent injustice by an abuse

of the process of the court, which cannot otherwise be remedied." The remedy in this tribunal which the common law afforded the plaintiffs, prevents all necessity for any resort to the unusual proceeding suggested by the learned justice. See Matthews v. Densmore, 109 U. S. 216, 3 Sup. Ct. 126.

Replevin has always been maintained in the state courts against the sheriff for property attached by him on writs from state tribunals. Scores of instances can be found in the digests of decisions in every one of the states; and we discern no valid reason why the same practice should not be sanctioned in the federal courts against their officers, if they have wrongfully attached another's property.

It is urged that the citizenship of the parties is not properly averred in the writ. It appears that they are citizens of different states, and in a number of similar instances at the present term, the court has allowed amendments to be made conformable to the truth, so that the citizenship may properly appear on the record, and the proposed amendment, filed June nineteenth, is allowed.

Motion overruled. Judgment on the verdict.